SAVINGS BANK OF EAST SAGINAW v. CHARLES W. GRANT, WILLIAM L. WEBBER ET AL.

*Foreclosure—Satisfaction of decree.*

A bank foreclosed a mortgage on some mill property and obtained a decree for sale. In order that the property might be leased and made profitable as soon as possible, the mortgager's assignee, believing that nothing could be realized beyond the debt, proposed to the bank to anticipate the date fixed for the foreclosure sale, provided he could be sure of a bid high enough to cover expenses. The bank promised to bid, and at the sale the property was bought in its interest, subject to the mortgage. It was afterward sold, however, under the foreclosure decree at a sum much below the mortgage debt, and the bank thereupon notified the assignee that payment of the deficiency would be claimed out of the assets which he held. On his petition an order was made satisfying the decree by the property sold, and on appeal this order was affirmed, on the ground that in arranging with the bank to anticipate the sale, the assignee was left to suppose that the bank, by taking title, would have no farther claim against him.

Appeal from Saginaw. Submitted April 23. Decided June 10.

FORECLOSURE. Complainants appeal from an order discharging a deficiency on foreclosure sale, and declaring the decree of foreclosure satisfied.

*John J. Wheeler* for complainant. A mortgage debt is discharged only to the amount for which the property is sold, Comp. L., §§ 5148-50; 2 Jones on Mortgages, § 950; a purchaser subject to a mortgage is not bound to pay the debt, *Crawford v. Edwards*, 33 Mich., 359; if a mortgagee buys the equity of redemption, equity presumes that he means to keep the mortgage and the equity separate if there is no express agreement to the contrary, or unless the other course is clearly for his benefit; and there is no merger, *Sheldon v. Edwards*, 35 N. Y., 285; 1 Jones on Mortgages, §§ 870-873; 4 Kent's Com., 102; *Bascom v. Smith*, 34 N. Y., 323; *Champney v. Coope*, 32 N. Y., 549; *Clift v. White*, 12 N. Y., 519; *Cooper v. Bigly*, 13 Mich., 463; *Dutton v. Ives*, 5 Mich., 515; *Snyder v. Snyder*, 6 Mich., 470; *McCabe v. Farnsworth*, 27 Mich., 52; *Ætna Life Ins. Co. v. Corn*, 7 Rep., 266.

*Benton Hanchett* for defendant Webber. Where mortgaged property has been bought by the complainant in foreclosure, through an agent, subject to the decree, payment of any portion of the decree cannot be claimed from the mortgager or from the mortgager's property in the hands of his assignee, *Shermer v. Merrill*, 33 Mich., 234; *Johnson v. Zink*, 51 N. Y., 333; *Ferris v. Crawford*, 2 Den., 598; *Jumel v. Jumel*, 7 Paige, 594; *Tice v. Annin*, 2 Johns. Ch., 125; *Vanderkemp v. Shelton*, 11 Paige, 34; *Shuler v. Hardin*, 25 Ind., 386; *Atherton v. Toney*, 43 Ind., 211; 1 Jones on Mortgages, §§ 736-7; a court can discharge a decree on satisfactory evidence that it has been satisfied, Comp L., § 5098.

MARSTON, J. In 1872 Grant and others executed a mortgage upon certain real estate, known as the Chicago mill property, to complainant. Afterwards Grant and Taylor, the mortgagors, made an assignment to William

L. Webber for the benefit of their creditors. Complain-
ant commenced proceedings in chancery for the foreclos-
ure of this mortgage, making Webber a party defendant;
a decree was obtained for the amount of the mortgage
debt,—over seventeen thousand dollars,—and April 18th,
1877, was the time fixed for a sale of the mortgaged
premises under the decree.

In February, 1877, Mr. Webber, acting under the
belief that as assignee he could not realize any thing
from this property, and with a view to enabling the
complainant to obtain control of the same at a date
earlier than could be done under the foreclosure pro-
ceedings, so that it might be rented for the entire saw-
ing season of that year, proposed to certain officers of
the complainant bank, to offer the property at public
sale provided he could be assured that a sum would be
bid sufficient to cover the expenses of the advertisement
and sale. This proposal was laid before the trustees of
the bank, and at a meeting held they authorized the
attorney of the bank to inform Mr. Webber that the
bank would make a bid, the amount thereof to be deter-
mined by the committee on securities. Mr. Webber was
so notified. The property was advertised in accordance
with such negotiations, the sale to be made subject to
the mortgage and decree held by complainant, setting
forth the amount thereof. At the time fixed for the sale,
one of the trustees, acting for the bank, bid twenty dol-
lars, the property was struck off to him, and a deed of
conveyance made to him therefor. The amount of this
bid was paid by the bank, and the trustee who took the
conveyance at once executed a declaration of trust to
the bank, that the premises were conveyed to him and
that he held the same in trust only and for the use and
benefit of the bank.

The mortgaged premises were afterwards sold under
the decree for $5,000, leaving a deficiency at that date
of over $13,000. Notice was thereupon given the assignee
that as this mortgage was given to secure the note of

Grant & Taylor, the bank claimed the deficiency should be paid out of the assets held by their assignee. Mr. Webber claiming that such was not the agreement under which he made the sale, petitioned the circuit court in chancery to inquire into the facts and make an order satisfying the decree by the property sold. Testimony was taken and an order entered in accordance with the prayer of the petitioner, and from this order complainant appeals.

A preliminary question was raised as to whether the assignee should not have appealed from the order confirming the sale, instead of filing his petition. We think there is no force in this objection. The assignee's objection is not to the sale or the amount bid thereat, but to the fact that a claim is made on him for the deficiency. It is this claim he objects to, and if the bank has no right to look to him for any portion thereof, then he may come into court in this manner and ask for relief.

Questions as to the rights and liabilities of mortgagees who have become the owners of the equity of redemption have frequently been discussed in this State. In *Snyder v. Snyder*, 6 Mich., 472, it was said that the holder of a mortgage interest should lose no substantial rights by becoming the owner of the equity of redemption; that "It would be a rule in conflict with every principle of justice, to hold that by the union of two separate interests, each of which represented a full and valuable consideration, either should be destroyed, unless some duty lay on the holder inconsistent with the assertion of any such rights."

This case cannot be disposed of by a lengthy discussion of or reference to authorities. We must rather turn to the facts, and ascertain, if we can, what the parties really sought to accomplish by their agreement, and the steps taken thereunder.

It is not claimed that there was any agreement made

in just so many words that the effect of the sale by Webber and bidding in of the property by the complainant should operate as a merger of the two interests, or that the debt represented by the decree should thereupon be considered as satisfied, or that no sale under the decree should take place, or that the bank might not look to him for the deficiency. All do agree, however, that the sale which Webber was to and did make, was to be subject to the mortgage and decree. It seems to have been assumed by all that the property, if sold under the decree, would not bring an amount sufficient to enable the assignee to realize anything therefrom, and he declared that he would not redeem the property before sale.

The assignee, holding the legal title and equity of redemption of property from which he could realize nothing for the benefit of creditors, expressed a desire of selling his interest. He did not expect to realize any thing from such sale, neither did he desire to be at the expense of advertising the property, and he declined to dispose of it otherwise than by a public sale, unless he could be assured some one would bid a sufficient amount to cover such expenses.

With this object in view, he applied to the officers of the bank with the result as already stated. There is but little dispute between the parties as to what was said; there is more as to their understanding of the effect thereof.

The president of the bank was called as a witness, and testified that the information conveyed to the board of trustees was through the attorney of the bank. That information was, "As I recollect it, that the bank could acquire title to that property by bidding and purchasing at the sale, and that the assignee would be satisfied to convey, *if the claim of the mortgage and the expenses of the sale were met by the bid.*" On cross-examination, this witness said:

"I think that in my first statement relative to this

I was in error in saying that I supposed Mr. Webber wished to realize the amount of the mortgage, * * * but I remember that he sold as assignee to the bank; that is, I think he sold as assignee, and of course, we bought his interest as assignee. My understanding was, that Mr. Webber, as assignee, attached no more value to the property *than the amount of the mortgage and the claim under it,* and that he didn't expect to realize for the estate *anything beyond this.*"

The attorney for the bank, who was also one of the trustees, testified as to the conversation he had with Mr. Webber, as follows: "Mr. Webber stated to me that he did not suppose the Chicago mill property would sell, as times were, *for much if anything more than the amount due on the mortgage,* and therefore there was no use in his looking after it any longer, and he wanted to get it out of the way, and get it out of the books." He farther, in the same connection, testified to what Mr. Webber's proposition was, and that he communicated the same to the trustees.

It is clear from all the evidence in the case that the assignee did not expect to realize anything from this property over the mortgage indebtedness, for the benefit of the creditors. And I consider it equally clear that while third parties would have the right to purchase at a sale made by him, yet that no one supposed that a bid from any third person was at all likely to be received. The bank, therefore, was in effect asked to agree to bid in the property subject to the mortgage which it held against it, and this it agreed to and did do. I think it may also be said that all parties contemplated the fact that when the property should be sold under the decree the bank would have, necessarily almost, to become the purchaser. One object the assignee had in selling and the bank in purchasing was to enable the latter to rent the property for the season. This, however, they could no more do than could the assignee unless they bid in the property at the sale under the decree. This property was considered valuable by all. That the assignee did not receive a *pro rata* proportion of the fair rental

value of the premises for the time to which he was enti- •
tled to hold possession, is clear. The bank purchased
so that it might own and control the property as its
own ; and whether the sale afterwards made under the
decree was for the purpose of cutting off other claims·
against the property or not, yet we think that sale was
not to be made for the purpose of enabling the bank to
afterwards bring in a claim against the assignee for any
deficiency that might arise.

The testimony of the president and of the attorney
of the bank is clear that the assignee at least expected
that the bank by taking the title to the property from
him would thereafter have no farther claim against him
as assignee. If not, it is difficult to see what he gained
by making the sale. He was no better off after the sale
than before. True he may have got the property off his
books, but if they were to come back on him for the
deficiency, 'twere better he had kept it on and looked
after it. By so doing he might at least have reduced
the deficiency, by procuring some one to bid higher at
the sale, and thus have benefited the creditors. Their
benefit was his primary object in making the sale. How
they were to be benefited if the assets were still liable
for the deficiency, it is difficult to see.

I am of opinion the order of the court was correct,
and should be affirmed with costs.

The other Justices concurred.